IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

TONY E. STARR,                        )
                                      )
            Plaintiff,                )
                                      )
v.                                    )     Case No. CIV-14-361-FHS-KEW
                                      )
CAROLYN W. COLVIN, Acting             )
Commissioner of Social                )
Security Administration,              )
                                      )
            Defendant.                )

**REPORT AND RECOMMENDATION**

Plaintiff Tony E. Starr (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 26, 1964 and was 49 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked in the past as an oil driller, oil rig worker, service technician, and assembly line worker. Claimant alleges an inability to work beginning March 5, 2011 due to limitations resulting from pain in his neck, shoulders, elbows,

hands, and legs.

**Procedural History**

On March 28, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 20, 2012, Administrative Law Judge ("ALJ") Doug Gabbard, II conducted an administrative hearing presiding in McAlester, Oklahoma while Claimant appeared by video in Fort Smith, Arkansas. On January 25, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied review of the decision on July 22, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform light work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to identify all of his severe impairments at step two; (2) reaching an improper RFC; and (3) making unsupported findings at step five.

4

## Step Two Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of diabetes and right shoulder impingement. (Tr. 17). The ALJ concluded Claimant retained the RFC to perform light work except that he could only occasionally reach overhead with his right arm. (Tr. 20). After consultation with a vocational expert, the ALJ found Claimant could perform the representative job of lock assembler. (Tr. 24). Based upon this finding, the ALJ determined Claimant was not under a disability for the period from March 5, 2011 through the date of the decision. Id.

Claimant suggests the ALJ should have found his carpal tunnel syndrome, low back pain, neck pain, torn rotator cuff, lateral epicondylitis in the elbow, and depression as additional severe impairments at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also

severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In this case, the ALJ did not end the sequential evaluation at step two by finding Claimant had no severe impairments. Moreover, he considered Claimant's diabetes, arthritis, depression, bursitis, carpal tunnel, and tennis elbow in the evaluation of the subsequent steps. (Tr. 19-24). Since he did not deny benefits at step two based upon the lack of any severe impairments, the ALJ's failure to include these conditions does not constitute reversible error.

## **RFC Determination**

Claimant contends the ALJ failed to include a number of different limitations in his RFC arising from both severe and non-severe impairments. Claimant first states that his shoulder impingement should have caused restrictions in all movements not just overhead reaching as the ALJ included in the RFC. The ALJ noted that Claimant's impingement condition improved with full range of motion and good stability. (Tr. 22).

On April 4, 2011, Claimant was evaluated by Dr. Michael S. Wolfe. Dr. Wolfe found Claimant had full range of motion in both shoulders, good alignment, and good strength and stability. (Tr. 218). On June 20, 2011 and July 11, 2011, Dr. Wolfe again found Claimant had full range of motion in both shoulders, good alignment, and good strength and stability. (Tr. 303, 305).

However, by June 12, 2012, Claimant was attended by Dr. Thomas

7

E. Cheyne who indicated Claimant had limited abduction of the right shoulder to 90 degrees. Dr. Cheyne further found Claimant could not reach behind his back and was generally tender in the right shoulder. He did not have gross instability and normal sensation in the upper extremities. Dr. Cheyne also noted Claimant's shoulder pain had significantly limited his range of motion in the shoulder. Dr. Wolfe had given Claimant four injections in his shoulder over three months without relief. (Tr. 356). Dr. Cheyne recommended that Claimant see a surgeon due to the lack of response to the injections. (Tr. 357).

On November 30, 2012, Dr. Allen Beachy completed a medical source statement on Claimant. In regard to Claimant's shoulder limitations, Dr. Beachy found Claimant should rarely work in an extended position or reach but never work above shoulder level or overhead. (Tr. 362).

RFC, "residual functional capacity," is defined by the regulations as what the claimant can still do despite his or her limitations. <u>Davidson v. Secretary of Health & Human Servs.</u>, 912 F.2d 1246, 1253 (10th Cir. 1990) (citing 20 C.F.R. § 404.1545(a)). It is apparent that the treatment received by Claimant on his shoulder was short-lived in its effectiveness and Claimant suffered from restrictions in range of motion which exceeded overhead

reaching. As a result, the ALJ should reassess his restriction on the use of Claimant's shoulder in light of the subsequent physicians' reports and determine whether further limitations should be imposed in his RFC assessment.

Claimant also contends his carpal tunnel syndrome would impose further limitations in his RFC. Dr. Steven Smith recommended that Claimant undergo carpal tunnel release surgery, bilaterally. (Tr. 359). Dr. Beachy limited Claimant to only occasional grasping and fingering/fine manipulation, bilaterally. (Tr. 362). However, Dr. Mohammed Quadeer evaluated Claimant on June 7, 2011 and found his grip strength was 5/5 bilaterally strong and firm and Claimant was able to do both gross and fine manipulation with the hands. Claimant's fingertip to thumb opposition was adequate. (Tr. 264). The ALJ's assessment of the limitations imposed by Claimant's carpal tunnel syndrome is supported by substantial evidence. Any attempt by this Court to modify the supported position taken by the ALJ amounts to a reweighing of the evidence upon which the ALJ relied in reaching his RFC, something this Court is prohibited from doing. Rutledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000).

Claimant next asserts his mental impairments should have been factored into his RFC. On June 21, 2011, Claimant was evaluated by Dr. Patricia J. Walz. Dr. Walz diagnosed Claimant with depression

secondary to medical condition (chronic pain). She assigned a GAF of 45 to 55 based upon reported suicidal ideation without intent or plan. (Tr. 273). She found Claimant's intellectual functioning in the low average to average range. Id. She assessed his social skills as fair, his speech was clear and intelligible, his attention and concentration were adequate on the date of testing, he persisted well, and his speed of information processing was average. He was not malingering. (Tr. 274).

Claimant also refers to a March 4, 2013 report from Dr. Robert Spray. However, the Appeals Council found the report was not retrospective and was issued after the ALJ issued his decision. (Tr. 2). The Council encouraged Claimant to file a new application if he was contending that he was disabled after the time period covered by the ALJ's decision. Id. Claimant attached a copy of Dr. Spray's medical source statement to his brief. Nothing in the report indicates the time period it covers or whether it was retrospective. Accordingly, this Court will not consider the report in this review.

The ALJ concluded Dr. Walz's report was entitled to "great weight" and found Claimant's mental condition to be non-severe and did not impose any limitations upon Claimant's RFC. (Tr. 22). This Court agrees and finds no error in the ALJ's analysis.

Claimant also challenges the ALJ's assessment of Dr. Beachy's report and affording it "little weight." (Tr. 22). The ALJ determined the report was inconsistent with the medical record, relying largely upon the evidence of improvement of Claimant's shoulder problems to reject the treating physician's conclusions. Id.

This Court has already found the ALJ's analysis of Claimant's shoulder impairment to be lacking and myopic in time. Moreover, Dr. Beachy states in his report that his conclusions in Claimant's functional abilities was based upon his treatment record of seven years for Claimant. (Tr. 363). Dr. Beachy imposed numerous restrictions on Claimant's functional abilities in his source statement - all of which the ALJ rejected based upon Claimant's perceived shoulder improvement.

. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the

opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). The ALJ's rejection of Dr. Beachy's opinion on Claimant's functional limitations did not comply with the precepts of Watkins and was based upon a partially erroneous conclusion concerning the improvement of Claimant's shoulder. On remand, the ALJ shall re-evaluate Dr. Beachy's opinion and consider the weight it should be given in light of the entirety of the medical record.

Claimant also finds the ALJ's degradation of his credibility to be wanting. One such criticism surrounds the ALJ's doubt that Claimant needed wrist braces, stating that there was no evidence that they were prescribed. (Tr. 21). In fact, some form of brace - a cockup splint - was prescribed by Dr. Wolfe for Claimant to wear on his right wrist at night. (Tr. 220).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. With the ALJ basing at least a part of his credibility assessment on erroneous information, a re-evaluation of the ALJ's entire credibility determination should occur on remand.

**Step Five Analysis**

Claimant contends the hypothetical questioning of the vocational expert did not include all of his limitations and was, therefore, insufficient. Since this Court has directed that the ALJ should consider additional impairments in his RFC assessment,

the ALJ shall also reformulate his hypothetical questioning of the vocational expert on remand based upon any modifications to the RFC.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 10th day of September, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE